UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY LEE BRIGGS,<br><br>    Petitioner,<br><br>    v.<br><br>C. SCHUYLER,<br><br>    Respondent. | No. 1:24-cv-00310-KES-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[THIRTY-DAY OBJECTION DEADLINE]** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. As discussed below, the Court finds the petition to be without merit and recommends it be **DENIED.**

**I.     PROCEDURAL HISTORY**

On October 5, 2022, a Fresno County jury found Petitioner guilty of first degree murder with a firearm enhancement (Cal. Penal Code §§ 187(a), 12022.53(d)). (Doc. 9-1 at 273.) On November 2, 2022, Petitioner was sentenced to a term of 50 years to life. (Doc. 9-1 at 273.)

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). (Doc. 40-12.) On September 18, 2023, the Fifth DCA affirmed the judgment. People v. Briggs, 2023 WL 6057499 (Cal.App. 2023). Petitioner petitioned for review in the California Supreme Court. (Doc. 9-10.) On November 21, 2023, the California Supreme Court summarily

denied review. (Doc. 9-11.) Petitioner then filed a number of habeas petitions in the Fresno County Superior Court and California Court of Appeals. (Doc. 9-12 to 9-25.) The petitions were denied. (Id.)

On March 14, 2024, Petitioner filed a petition for writ of habeas corpus in this Court. (Doc. 1.) Respondent filed an answer on May 3, 2024. (Doc. 10.) Petitioner did not file a traverse.

## II.   FACTUAL BACKGROUND[1]

Petitioner shot and killed his cousin, Russell Lowe, one evening in June of 2022 at a Fresno public park where Lowe frequently socialized. Earlier that evening, Lowe had picked up Kenyanna Ricks—with whom he had several children—and dropped her off near the park, telling her he would meet her at the park soon. According to the detective later assigned to the homicide case, Ricks reported that while she was in the car with Lowe driving toward the park, Lowe received a call on speakerphone during which the caller mentioned that Petitioner was at the park.[2] Petitioner and Lowe had once been "fairly close," but they were no longer on friendly terms, for reasons unknown to Ricks.

After being dropped off, Ricks walked to the park and sat on the bleachers near one of the softball fields. About 60 people were at the park that evening, and a recreational team was playing or practicing on the softball diamond. Ricks saw Petitioner standing near the bleachers, acting "nonchalant" and talking with others.

Shortly thereafter, Lowe arrived in his car, but did not park in a designated space. He double-parked in the middle of the street, got out, and left the car running with his driver's side door open. Lowe walked over to the bleachers where Ricks was. Ricks testified that Lowe was acting "cocky" but "he wasn't looking like he was angry or anything." She also testified that, although she did not know the basis for "whatever dispute, whatever argument [Petitioner and

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts in Briggs, 2023 WL 6057499, *1-2. See Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

[2] At trial, Ricks denied having said this to the detective but testified that Lowe did receive a call from another woman during their drive.

2

1   Lowe] had," she knew that "when [Lowe] got out [of] the car like that, there was a reason for it."

2   At trial, Ricks described Lowe's fatal encounter with Petitioner as follows. Lowe was coming toward Ricks from one direction, Petitioner was coming up from behind her, and they stopped in front of her, about six feet apart from each other. Lowe greeted Petitioner by saying, "What's up, bitch ass n*****?" Lowe did not "flinch" or "lunge" at Petitioner; he "just stood there." Petitioner did not say anything back, but he pulled a gun partly out of his pocket, displaying the handle to Lowe. Lowe stayed where he was standing and said, "I'm not worried about that." Petitioner then pulled out the gun and shot Lowe in the face. Lowe fell to the ground, and Ricks rushed to give him CPR. Petitioner walked past them, smiled, and walked away.

The two men who were playing on the softball diamond that evening also testified at the trial. Both heard the gunshot and an argument beforehand, but neither saw the shooting nor heard any of the words exchanged. The first ballplayer, who was playing shortstop, took special notice of Lowe's arrival because it was his car that Lowe had double-parked beside. The shortstop did not know Lowe, but he described seeing a tall African American man get out of the car and walk into the park fast, "like he was in a hurry." He saw Lowe give a little hug to a woman (perhaps Ricks) and then walk up to a group of about five men standing nearby. When asked whether Lowe seemed angry, the ballplayer testified, "He just looked like he was there to do something, that's it." He added that Lowe's "face looked a little angry, but he just had a calm like look type of face [sic]." After Lowe approached the group, the shortstop looked away for less than 15 seconds and then heard the gunshot. Just before the gunshot, he heard "a mild argument, like voices were getting loud" for "a couple [of] seconds, maybe to a minute." He did not hear any threats, nor could he hear any of the statements being made.

The second ballplayer was standing near first base conversing, with his back to the bleachers, when he heard the loud pop of the gunshot behind him. When asked whether he heard any sort of argument or loud words spoken beforehand, the second ballplayer answered that it was "just loud in general," with music and people talking. He recalled a group of about six African American people in the area. He heard "somebody getting really loud," and he did hear a short argument, which he described as "two people ... bickering" behind him. He estimated that

3

45 seconds or less passed between the bickering and the pop of the gunshot. Like his teammate, the first baseman could not say what words were exchanged before the gunshot, and he did not hear any threats.

Lowe was taken to the hospital, where he died about two weeks later as a result of the gunshot, which perforated his brain. Petitioner was apprehended the day after the shooting.

**III.     DISCUSSION**

    A.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

    B.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

Under Section 2254(d)(1), a state court decision is "contrary to" clearly established

federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406). This court looks to "Supreme Court holdings at the time of the state court's last reasoned decision" as "the source of clearly established Federal law for the purposes of AEDPA." Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005). A Supreme Court precedent is not clearly established law under section 2254(d)(1) unless the Court "squarely addresses the issue" in the case before the state court. Wright v. Van Patten, 552 U.S. 120, 125–26 (2008) (per curiam) (concluding that a state court had not unreasonably applied federal law to a claim of prejudice under Strickland where the logic of petitioner's argument would have required the extension of the Supreme Court's inherent prejudice doctrine to a new context); Carey v. Musladin, 549 U.S. 70, 76–77 (2006) (same). While "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt," Yarborough v. Alvarado, 541 U.S. 652, 666 (2004), "when a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case." Murdoch v. Castro, 609 F.3d 983, 991 (9th Cir. 2010). "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state court decision.'" White v. Woodall, 572 U.S. 415, 426 (2014) (quoting Yarborough, 541 U.S. at 666).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). The petitioner "must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" Shinn v. Kayer, 592 U.S. 111, 118 (2020) (quoting Virginia v. LeBlanc, 582 U. S. 91, 93 (2017) (*per curiam*)). Rather, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's

5

ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility of fairminded disagreement*." Richter, 562 U.S. at 103 (emphasis added); see also Kayer, 592 U.S. at 118.  In other words, so long as fairminded jurists could disagree with each other as to whether the state court was correct, the state court decision is not unreasonable under AEDPA.  Congress "meant" this standard to be "difficult to meet." Richter, 562 U.S. at 102.

Section 2254(d)(2) pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997).  The federal habeas court must give "substantial deference" to the state court. Brumfield v. Cain, 576 U.S. 305, 314 (2015). "Factual determinations by state courts are presumed correct" and the petitioner bears the burden of overcoming the presumption with "clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340; 28 U.S.C. § 2254(e)(1). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004). If "'[r]easonable minds reviewing the record might disagree' about the finding in question, '. . . that does not suffice'" to prove the lower court's factual determination was unreasonable. Wood v. Allen, 558 U.S. 290, 301 (2010) (alteration in original) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Andrews v. Davis, 994 F.3d 1042, 1107 (9th Cir. 2019) (en banc).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error

1   had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

2   Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)

3   (holding that the Brecht standard applies whether or not the state court recognized the error and

4   reviewed it for harmlessness).

   C.   Review of Petition

   Petitioner presents two grounds for relief: 1) The trial court erred by denying his request for a jury instruction on a lesser-included offense; and 2) the sentencing minute order and abstract of judgment contained errors.

   1.   Claim One

   Petitioner first contends the trial court violated his constitutional rights by declining to instruct the jury on a lesser-included offense. He raised this claim on direct appeal. In the last reasoned decision, the appellate court denied the claim, as follows:

> The trial court instructed the jury on first degree murder and second degree murder but declined defendant's request to also instruct on voluntary manslaughter based on sudden quarrel or heat of passion. After independent review of the record, we agree with the trial court that there was insufficient evidence of provocation that would have caused a person of average disposition to act rashly and without due deliberation, so as to warrant a voluntary manslaughter instruction.
>
> *A. Governing Law*
>
> A trial court has a sua sponte duty to instruct on a lesser included offense if there is substantial evidence from which the jury reasonably could conclude the defendant is guilty of the lesser offense, rather than the charged (greater) offense. (*People v. Moye* (2009) 47 Cal.4th 537, 556.) "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*Ibid*.) "The 'substantial evidence requirement is not satisfied by "'any evidence ... no matter how weak.'"'" (*People v. Nelson* (2016) 1 Cal.5th 513, 538.) "Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense." (*People v. Simon* (2016) 1 Cal.5th 98, 132.) On appeal, we review de novo whether the trial court improperly failed to instruct on a lesser included offense. (*People v. Souza* (2012) 54 Cal.4th 90, 113.)
>
> Manslaughter, defined as "'the unlawful killing of a human being without malice'" (§ 192), is a lesser included offense of murder. (*People v. Nelson, supra*, 1 Cal.5th at p. 538; *People v. Breverman* (1998) 19 Cal.4th 142, 154, disapproved on other grounds by *People v. Schuller* (15 Cal.5th 237, Aug. 17, 2023, No. S272237).) "'The offense is voluntary manslaughter when the killing is "upon a sudden quarrel or heat of passion."'" (*People v. Manriquez* (2005) 37 Cal.4th 547, 583 (*Manriquez*), quoting § 192, subd. (a).) The "'sudden quarrel or heat of passion'" theory has both an objective and subjective component: objectively, "'[t]he provocation must be such that an average, sober person would be so inflamed that he or she would lose reason and judgment'" (*People v. Gutierrez* (2009) 45 Cal.4th

7

789, 825, 826 (*Gutierrez*)); and, subjectively, the defendant "must actually ... kill under the heat of passion" (*People v. Steele* (2002) 27 Cal.4th 1230, 1252). (See *Manriquez*, at pp. 583–584; *People v. Waidla* (2000) 22 Cal.4th 690, 740, fn. 17 [same provocation required for both "'sudden quarrel'" and "'heat of passion'"].) "Adequate provocation as an element of voluntary manslaughter must be affirmatively demonstrated; it cannot be left to speculation." (*People v. Williams* (1969) 71 Cal.2d 614, 624; see *Gutierrez*, at p. 826 ["'Adequate provocation and heat of passion must be affirmatively demonstrated.'"].)

  *B. Analysis*

No voluntary manslaughter instruction was required in this case because there was insufficient evidence to satisfy either the objective or subjective components of the sudden quarrel/heat of passion theory of that lesser offense.

Taking the subjective component first, even viewed in the light most favorable to defendant, there was no evidence from which the jury could infer that defendant's reason was in fact obscured by passion when he shot Lowe. Ricks, the only trial witness to actually see the encounter between defendant and Lowe, offered no testimony regarding defendant's outward emotional reaction to Lowe's insulting greeting nor his emotional state at any other time *during* the incident except that defendant smiled after shooting Lowe. As in Manriquez, to which the People direct us, "[t]here was no showing that [defendant] exhibited anger, fury, or rage; thus, there was no evidence that defendant 'actually, subjectively, kill[ed] under the heat of passion.'" (*Manriquez, supra*, 37 Cal.4th at p. 585; see *People v. Johnson* (1993) 6 Cal.4th 1, 43–44 [rejecting the defendant's contention that the trial court erred in failing to instruct on provocation for purposes of second degree murder when the trial evidence did not indicate whether the victim's statements and conduct had any effect on the defendant's state of mind], abrogated on another ground by *People v. Rogers* (2006) 39 Cal.4th 826, 879.)

Defendant chose not to testify and provide direct evidence of his emotional state. (See *People v. Williams, supra*, 71 Cal.2d at p. 624 [noting the defendant's failure to testify in affirming refusal to instruct on voluntary manslaughter].) And there also was no circumstantial evidence to support an inference that defendant fired while inflamed by a sudden quarrel or heat of passion, as opposed to firing with deliberation. Defendant attempts to distinguish this case from *Manriquez* by pointing to the ballplayers' testimony that they heard an argument and loud voices before the gunshot. [Fn.5] But neither player ascribed the loud voices or "bickering" to defendant in particular, out of the five or six people gathered near him by the bleachers; and even assuming defendant was raising his voice, the players also could not describe what he might have been saying. A loss of reason and judgment cannot reasonably be inferred from volume alone.

> [Fn.5] Defendant describes the players as having testified that they heard "an altercation between the two men." But neither player used the word "altercation," and there was no indication that either player could identify the participants in the argument they heard.

Moving to the objective component, there also was insufficient evidence that Lowe's conduct rose to the level of provocation that would "cause an average person to become so inflamed as to lose reason and judgment." (*Manriquez, supra*, 37 Cal.4th at p. 586.) Our high court has held "a voluntary manslaughter instruction is not warranted where the act that allegedly provoked the killing was no more than taunting words, a technical battery, or slight touching." (*Gutierrez,*

8

*supra*, 45 Cal.4th at p. 826, citing *Manriquez, supra*, 37 Cal.4th at p. 586.) In *Manriquez*, "the victim approached [the] defendant and 'started offending him,' called [the] defendant 'a mother fucker,' asking [him] whether he had a gun and daring him to use it." (*Manriquez*, at p. 585.) The Supreme Court found this conduct "plainly ... insufficient" to satisfy the objective standard. (*Id.* at p. 586; *see id.* at pp. 585–586.)

We see no meaningful distinction between the victim's conduct in *Manriquez, supra*, 37 Cal.4th 547 and Lowe's conduct toward defendant here. Taken in the light most favorable to defendant, the evidence was that Lowe walked up to defendant in a hurry—with purpose, or even in anger—and called him a "bitch ass n*****"; when defendant then partly displayed his firearm, an inferable threat, Lowe responded that he was "'not worried about that,'" which could be construed (generously) as daring defendant to use it. As discussed above, there was insufficient evidence that it was defendant and Lowe (as opposed to others around them) who were arguing in loud voices; but even assuming that, in between the two statements described by Ricks, the men argued for up to 45 seconds before the gunshot, again there was no evidence of what was said that would so inflame an average person. Likewise, there was no evidence of any physical aggression or threats of aggression by Lowe to otherwise distinguish this case from *Manriquez*. We are not convinced of the importance of all the circumstantial evidence from which it could be surmised that Lowe came to the park in order to confront defendant—hearing beforehand that defendant was at the park, leaving his car running upon arrival, walking right up to defendant—given that the evidence of the actual ensuing confrontation was virtually identical to that adduced in *Manriquez*. Since the victim's conduct in *Manriquez* did not satisfy the objective requirement for provocation, we must conclude that Lowe's conduct here also was "insufficient to cause an average person to become so inflamed as to lose reason and judgment." (*Manriquez*, at p. 586.)

Defendant relies on the rule from *People v. Tufunga* (1999) 21 Cal.4th 935, 944 that "'"[d]oubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused."'" But this is not a particularly close case, and "'[a] party is not entitled to an instruction on a theory for which there is no supporting evidence.'" (*Ibid.*; c.f. *People v. Cooksey* (2002) 95 Cal.App.4th 1407, 1410 [no duty to instruct when the evidence is "minimal and insubstantial"].) The evidence did not affirmatively demonstrate adequate provocation, as required to warrant a voluntary manslaughter instruction. (See *Gutierrez, supra*, 45 Cal.4th at p. 826; *People v. Williams, supra*, 71 Cal.2d at p. 624.)

Accordingly, the trial court properly denied defendant's request for an instruction on voluntary manslaughter based upon the sudden quarrel/heat of passion theory. [Fn.6]

> [Fn.6] This conclusion makes it unnecessary to consider the parties' additional arguments as to whether the refusal to give the instruction was prejudicial.

Briggs, 2023 WL 6057499, at *2-5.

### a. Failure to Present a Cognizable Federal Claim

The claim fails to present a federal question. "[T]he failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional

question," Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998), because there is no clearly established federal constitutional right to lesser-included offense instructions in non-capital cases. United States v. Rivera-Alonzo, 584 F.3d 829, 834 n. 3 (9th Cir. 2009) (citing Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000)).  The Court cannot find a constitutional right to a lesser-included offense instruction here as that would require the application of a new rule of law, something the court cannot do under the holding in Teague v. Lane, 489 U.S. 288 (1989). See Solis, 219 F.3d at 929 (habeas relief for failure to instruct on lesser included offense in non-capital case barred by Teague because it would require the application of a new constitutional rule); Turner v. Marshall, 63 F.3d 807, 819 (9th Cir.1995), *overruled on other grounds by* Tolbert v. Page, 182 F.3d 677 (9th Cir.1999) (en banc) (same).

For the same reasons, Petitioner's claim cannot survive scrutiny under 28 U.S.C. § 2254(d).  Federal habeas relief is barred unless Petitioner can demonstrate that the state court's alleged failure was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Since there is no clearly established Supreme Court authority requiring lesser-included offense instructions in a non-capital case, Petitioner's claim is barred under § 2254(d).

                b.       Harmless Error

As reasonably determined by the state court, even if the failure to sua sponte instruct on voluntary manslaughter constituted error, it was harmless because there was no evidence to support such instruction.  The court noted that Petitioner exhibited no anger, fury or rage at any time during the encounter.  The only subjective sign of emotion came after Petitioner shot the victim when he smiled.  Indeed, Petitioner's act of calmly walking past the fatally shot victim while smiling undermines any claim of heat of passion.  Second, there was no evidence that the victim's conduct rose to the level of provocation as to cause an average person to become so inflamed as to lose judgment and reason.  The victim did not exhibit any acts of physical aggression or threats of aggression.  The only evidence of the victim's conduct was his act of approaching Petitioner and calling him a "bitch ass n*****," which is hardly sufficient to inflame an average person to such a degree as to lose all reason and judgment.  Thus, even if the jury had

been instructed on involuntary manslaughter, there is no reasonable probability that the result would have been different.

### 2. Claim Two

In his second ground for relief, Petitioner alleges the sentencing minute order and abstract of judgment contained certain errors. As by Respondent notes, the appellate court agreed with Petitioner on direct appeal and ordered the errors corrected. Briggs, 2023 WL 6057499, *5.

The case or controversy requirement of Article III of the Federal Constitution deprives the Court of jurisdiction to hear moot cases. Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983); NAACP., Western Region v. City of Richmond, 743 F.2d 1346, 1352 (9th Cir. 1984). A claim is moot if it is "no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1984). The Federal Court is "without power to decide questions that cannot affect the rights of the litigants before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam) (quoting Aetna Life Ins. Co. v. Hayworth, 300 U.S. 227, 240-241 (1937)). Since Petitioner has already been granted relief on this claim by the state court, it is no longer justiciable and should be denied as moot.

## IV.     RECOMMENDATION

Based on the foregoing, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within fourteen (14) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.

Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **June 7, 2024**                          /s/ *Sheila K. Oberto*                .
                                              UNITED STATES MAGISTRATE JUDGE